UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| PREMIER FINANCIAL SERVICES, LLC, | § § | a Civil Action |
| Plaintiff, | § | |
| vs. | § § | CASE: _____ |
| JAVIER RICARDO SOLANO RAMIREZ, | § § | (Civil Docket) |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL
COMPLAINT FOR MONETARY DAMAGES**

**TO THE HONORABLE JUDGE OF THE
UNITED STATES DISTRICT COURT:**

COMES NOW, **PREMIER FINANCIAL SERVICES, LLC** ("Plaintiff" or "Premier"), complaining of **JAVIER RICARDO SOLANO RAMIREZ** ("Mr. Ramirez" or "Defendant"), and petitions the Court for a judgment for damages, to-wit:

### Parties, Jurisdiction & Venue

*Party Facts*

1. Plaintiff, **PREMIER FINANCIAL SERVICES, LLC**, is a financial institution chartered in the State of Connecticut. Plaintiff's principal place of business, which contains its nerve center (the Corporate Headquarters), is at 47 Sherman Hill Road, Woodbury CT 06798.

2. Defendant **JAVIER RICARDO SOLANO RAMIREZ** ("Mr. Ramirez") is an individual. Defendant Mr. Ramirez resides in the State of Texas; Driver's License [last three] 206; Social Security [last three] 719; and Date of Birth [partial] February XX, 1972. Defendant Mr. Ramirez may be served with process via personal delivery at 1201 Stone Ridge Place, El Paso TX 79912.

*Jurisdiction: Diversity & Controversy*

3. This Court has diversity jurisdiction as Plaintiff and Defendant Mr. Ramirez are of diverse citizenship. *See* 28 U.S.C. § 1332. Premier is a Member Managed limited liability company chartered in the State of Connecticut. *See* ch. 613a, tit. 34, CONN. GEN. STAT. Premier's Member, there is only one, is **1st FINANCIAL BANK USA**, a corporation chartered in the State of South

Dakota ("Premier's Member") with its Principal Office at: 363 W. Ancor Drive, Dakota Tunes SD 57049 ("Principal Office").  *See* CONN. GEN. STAT. § 33-602(22).  Premier's Member's Principal Office is that Member's principal place of business, and nerve-center.  *See Hertz Corp. v. Friend*, 599 U.S. 77, 92-93 (2010).  Plaintiff asserts Premier's Member's citizenship resides in the State of South Dakota, thus preserving this Court's diversity-jurisdiction.  *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237-38 (10th Cir. 2015); *see also* 28 U.S.C. § 1332(c)(1).  Therefore, Plaintiff is a citizen of the State of North Dakota; Defendant Mr. Ramirez is an individual citizen of the State of Texas.

4. The amount of controversy between the parties is an amount of United States currency in excess of $75,000.00.  *See* 28 U.S.C. § 1332(a).  As there is diversity of citizenship and an amount in excess of $75,000.00, jurisdiction in this Court is appropriate.  *See* 28 U.S.C. § 1332.

*Venue*

5. Venue for this civil action is appropriate in the Western District of Texas.  *See* 28 U.S.C. §§ 124(d)(3), 1391.  Defendant Mr. Ramirez resides in the Western District of Texas. *See* 28 U.S.C. §§ 124(d)(3), 1391(a)(1).  Also, a substantial part of the events giving rise to the claim occurred in the Western District of Texas.  *See* 28 U.S.C. § 1391(a)(2).

**Facts**

*Lease between Mr. Ramirez and Premier*

6. On 19 September 2017, Plaintiff entered into an *Open End Motor Vehicle Lease Agreement* ("Contract") with Mr. Ramirez, for the lease or, alternatively, purchase money acquisition of a **2017 Ferrari 488 GTB, VIN: ZFF79ALA8H0220224** ("Collateral").  A true and correct copy of the Contract is appended as **Exhibit "A"**.  The Contract requires Mr. Ramirez, after the initial month's payment, to *inter alia*, pay fifty-eight payment of $3,021.00 per month to Plaintiff.

### *Mr. Ramirez Defaults on Contract*

7.    Mr. Ramirez defaulted per the Contract as he did not timely make the $3,021.00 payment due 21 December 2018 to Plaintiff.  Plaintiff subsequently recovered the Collateral from Defendant.  Plaintiff or its agent sold the Collateral in a commercially-reasonable manner. Defendant, per the Contract, has early-termination liability, upon which demand has been made.

### *Mr. Ramirez Damages Plaintiff*

8.    Defendant, having not paid the breach liability, has defaulted on the terms of the Contract. And under the terms of the Contract, Plaintiff, where Defendant contractually waived notice of acceleration, has accelerated maturity of the amount due under the Contract.  After crediting all payments and offsets, the breach created on 1 February 2019 a monetary deficiency balance of $77,758.83, plus interest of 18% per annum totaling $41,978.77 (as of 1 February 2022), totaling $119,748.60, plus interest from 2 February 2022 forward, is due from Defendant and remains unpaid.

### *Condicio Sine Qua Non*: Conditions Precedent

9.    All conditions precedent necessary to recovery have been performed by Plaintiff or waived by Defendant.

### COUNT ONE:
### Cause of Action: Common-Law [Tex.] Breach of Contract

10.    Plaintiff bases its count on the facts in paragraphs six through eight, *supra*.

11.    Plaintiff has a valid, enforceable contract with Defendant.  Plaintiff performed and tendered performance per the Contract with Defendant.  And by refusing to pay the balance on the Contract, Defendant has breached the Contract with Plaintiff.  Defendant's breach has damaged Plaintiff.  Said damages are the expectation damages of $119,748.60, plus interest from 2 February 2022 forward.  Plaintiff seeks damages against Defendant for said amount.

### COUNT TWO:
### Alternative Cause of Action:
### Common-Law [Tex.] Claim for Monetary Deficiency

12.    Plaintiff bases its count on the facts in paragraphs six through eight, *supra*.

13. Plaintiff and Defendant executed the Contract, containing a security agreement, specifying the Collateral. Defendant defaulted on the Contract. Defendant failed to repay the Contract. Plaintiff foreclosed its security interest in the Collateral and sold it in a commercially-reasonable manner. After such disposition of the Collateral, a deficiency exists, repayment of which is required to make Plaintiff whole. This deficiency amount is $119,748.60, plus interest from 2 February 2022 forward. Plaintiff seeks damages against Defendant for said amount.

## COUNT THREE:
## Alternative Cause of Action:
## Common-Law [Tex.] Account Stated

14. Plaintiff bases its count on the facts in paragraphs six through eight, *supra*.

15. A transaction took place between Plaintiff and Defendant. The transaction gave rise to the indebtedness of Defendant to Plaintiff. An agreement, express or implied, between Plaintiff and Defendant fixes the amount due. The Defendant made a promise, express or implied, to pay the indebtedness. Defendant's failure to pay the indebtedness caused Plaintiff actual expectancy economic damages of $119,748.60, plus interest from 2 February 2022 forward, for which Defendant should be liable.

## COUNT FOUR:
## Alternative Cause of Action:
## Common-Law [Tex.] *Quantum Meruit*

16. Plaintiff bases its count on the facts in paragraphs six through eight, *supra*.

17. Plaintiff provided valuable services of materials to Defendant. The services or materials were provided for the Defendant. Defendant accepted the services or materials. Plaintiff incurred economic damages of $119,748.60, plus interest from 2 February 2022 forward, for which Defendant should be liable

### Authority for Reasonable Attorney's Fees

18. Plaintiff is entitled to recover from Defendant its reasonable and necessary attorney's fees and costs and expenses for legal services associated with the plead causes of action through trial and all appeals or per the Contract (or both). *See* TEX. CIV. PRAC. & REM. CODE § 38.001.

19.     Plaintiff has employed the undersigned attorney to bring this suit and has contracted to pay said attorney a reasonable fee for such service, which Plaintiff states would not be less than $3,000.00 in the trial court (as mentioned in the complained-of amount); furthermore, Plaintiff pleads for contingent awards for its attorney's fees and costs associated in the event of a new trial motion of $1,500.00, $8,000.00 in the event of an appeal to the Court of Appeals, and $5,000.00 in the event of a petition for review to the Supreme Court of the State of Texas, and $5,000.00 in the event said petition for review is granted.

### Interest & Costs

20.     Plaintiff requests it recover from Defendant both its pre- and post- judgment interest at the highest legal or contractual rates (18% per Contract); plus all costs of Court (including the $400 filing fee as mentioned in the complained of amount).

### Prayer for Relief

21.     WHEREFORE, PREMISES CONSIDERED, Plaintiff, prays the Court to order the Clerk of Court to issue a Summons, and, after service and after either pre-trial disposition or upon a final trial of this cause, Plaintiff recover from the Defendant the following:

(1)     Judgment as Plead;

(2)     Pre- and Post-judgment interest as provided by law or Contract;

(3)     Reasonable and necessary attorney's fees for legal services provided for Plaintiff;

(4)     Costs of suit; and

(5)     Such other and further relief, in law and at equity, to which Plaintiff may be justly entitled.

## Date & Signature

22. RESPECTFULLY SUBMITTED by Counsel for Plaintiff and REMEMBERED this the ___9th___ day of the month of February, year 2022.

                                                **PADFIELD & STOUT, L.L.P.**
Dallas Office:
705 Ross Avenue
Dallas TX 75202
+1 214 215 6402
jjohnson@padfieldstout.com

_____
JOHN E. JOHNSON, of counsel
Bar Card [Tex.] 24025457

ADDENDUM
FAIR DEBT COLLECTION PRACTICES ACT
28 U.S.C. §§ 1692 *et seq.*
<u>VALIDATION NOTICE</u>

1.      The amount of the debt owed by Javier Ricardo Solano Ramirez is $119,748.60, plus interest from 2 February 2022 forward (see calculation behind this page), plus 18% per annum henceforward.

2.      The name of the creditor to whom the debt is owned is PREMIER FINANCIAL SERVICES, LLC.

3.      You have already been given notice and an opportunity to dispute the debt, or any portion thereof.

4.      Premier Financial Services, LLC, is the original-creditor.

5.      Premier Financial Services, LLC, has retained PADFIELD & STOUT, L.L.P., a law-firm, to provide legal services to collect this debt; any information will be used for that purpose.

DocuSign Envelope ID: F3EB9143-E9CB-4E9B-B9B7-B7F4AFCD2EFB

## OPEN END MOTOR VEHICLE LEASE AGREEMENT

*This is a copy view of the Authoritative Copy held by the designated custodian*

THIS LEASE AGREEMENT is entered into 9-19-2017 between **PREMIER FINANCIAL SERVICES, LLC** ("Lessor") whose address is 47 Sherman Hill Road, Woodbury, CT  06798, and whose phone number is (203) 267-7700 and **Javier Ricardo Solano Ramirez** ("Lessee") whose address is 5501 N Stanton Street Apt #16, El Paso, TX  79912 and covers the lease of the vehicle described below.  As used in this lease the words "you", "yours" or "your" refer to the lessee and "we", "our" or "us" refer to the lessor.

### 1. DESCRIPTION OF LEASED VEHICLE

| YEAR | MAKE | MODEL | BODY STYLE | COLOR | NEW/USED | VEHICLE ID NUMBER |
|---|---|---|---|---|---|---|
| 2017 | Ferrari | 488 GTB | Coupe | Red | Used | ZFF79ALA8H0220224 |

| PRIOR USE OF VEHICLE | PRIOR WRECKAGE | MILEAGE | CYL. | TRANS. | P. BRAKES | P. STEERING | A.C. | MSRP. |
|---|---|---|---|---|---|---|---|---|
| Personal | No | 428 | 8 | Automatic | Yes | Yes | Yes | Not Available |

### 2. TRADE INFORMATION:

| | YEAR | MAKE | MODEL | VIN |
|---|---|---|---|---|
| | 2014 | Ferrari | 458 Italia | ZFF68NHA7E0200704 |

$240,000.00 Agreed Value (before debt) - $216,170.73 prior credit or lease balance = $23,829.27 Net Trade-In Value

### GAP LIABILITY NOTICE

In the event of theft or damage to the vehicle that results in a total loss, there may be a GAP between the amount due upon early termination and the proceeds of your insurance settlement and deductible. THIS LEASE PROVIDES THAT YOU ARE LIABLE FOR THE GAP AMOUNT.  Optional coverage for the GAP amount or a GAP Waiver may be offered for an additional price.

### THERE IS NO COOLING OFF PERIOD

The law does not provide for a "cooling off" or other cancellation period for vehicle leases.  Therefore, you cannot later cancel this lease simply because you change your mind, decided the vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this lease only with the agreement of the lessor or for legal cause, such as fraud.

### 3. DISCLOSURES

| 3.a. Amount Due at Lease Signing or Delivery: (Itemized below)** $60,285.32 | 3.b. Monthly Payments: Your first monthly lease payment of $6,042.00 is due on 9/21/2017 followed by 58 payments of $3,021.00  due on the 21st of each month.  The total of your monthly payments is $181,260.00**† | 3.c. Other Charges: (not part of your monthly lease payment) Off Lease Fee $495.00 Total $495.00 | 3.d. Total of Payments: (the amount you will have paid by the end of the lease) $235,998.32 † You will owe an additional amount if the actual value of the vehicle is less than the residual value. |
|---|---|---|---|

**Itemization of Amount Due at Lease Signing or Delivery**

| 3.e.**Amount Due at Lease Signing or Delivery: | | 3.f. How the Amount Due at Lease Signing or Delivery will be Paid: | |
|---|---|---|---|
| i. Capitalized Cost Reduction | $47,550.00 | i.   Net Trade in Allowance | $23,829.27 |
| ii. Texas Sales Tax @ 6.25% | $4,812.50 | ii.  Rebates and Noncash Credits | $0.00 |
| iii. First Monthly Lease Payment | $6,042.00 | iii. Amount to be Paid in Cash | $36,456.05 |
| iv. Title, Registration and License Fees | $152.75 | | |
| v. Refundable Security Deposit | $0.00 | Total: | $60,285.32 |
| vi. Document Processing Charge (not a governmental fee) | $150.00 | | |
| vii. Acquisition Fee | $995.00 | | |
| viii. Supplemental Title Fee | $0.00 | | |
| ix. Other (specify) TX Vehicle Inventory Tax: | $583.07 | | |
| Total: | $60,285.32 | | |

| 3.g. Your Monthly Lease Payment is Determined as Shown Below: | |
|---|---|
| i. Gross Capitalized Cost - The agreed upon value of the vehicle ($317,000.00) and any items you pay over the lease term (such as taxes, fees, mechanical breakdown protection contract, insurance, service contracts and any outstanding prior credit or lease balance, all of which is itemized in section 4). | $317,000.00 |
| ii. Capitalized Cost Reduction - The amount of any rebate, cash payment, net trade-in allowance or noncash credit you pay that reduces the gross capitalized cost. | $47,550.00 |
| iii. Adjusted Capitalized Cost - The amount used in calculating your base monthly payment. | =$269,450.00 |
| iv. Residual Value - The value of the vehicle at the end of the lease used in calculating your base monthly payment. | -$160,000.00 |
| v. Depreciation and Any Amortized Amounts - The amount charged for the vehicle decline in value through normal use and for any other items paid over the lease term. | =$109,450.00 |
| vi. Rent Charge - The amount charged in addition to the depreciation and any amortized amounts. | +$71,810.00 |
| vii. Total of Base Monthly Lease Payments - The depreciation and any amortized amounts plus the rent charge. | =$181,260.00 |
| viii. Lease Payments - The number of payments in your lease. | 60 |
| ix. Base Monthly Payment: - 1st month @ $6,042.00 + 58 Monthly Payments @ | =$3,021.00 |
| x. Monthly Sales Tax | +$0.00 |
| xi. Total Monthly Lease Payment | =$3,021.00 |
| Rent and other Charges - The total amount of rent and other charges imposed in connection with your lease. | $78,998.32 |

3.h. Early Termination. You may have to pay a substantial charge if you end this lease early. The amount may be up to several thousand dollars. The actual charge will depend on when the lease is terminated.  The earlier you end the lease, the greater the charge is likely to be.

3.i. Excessive Wear and Use. YOU MAY BE CHARGED FOR EXCESSIVE WEAR BASED ON OUR STANDARDS FOR NORMAL USE (SEE SECTION 14 BELOW) AND FOR MILEAGE IN EXCESS OF 3,500 MILES PER YEAR AT THE RATE OF $1.50 PER MILE. IF YOU ELECT TO PURCHASE THE VEHICLE AT THE END OF THE LEASE AND PAY THE AGREED UPON "RESIDUAL VALUE", YOU WILL NOT BE RESPONSIBLE FOR ANY EXCESS WEAR OR MILEAGE.

3.j. Purchase Option at End of Your Lease Term. You have an option to purchase the vehicle "as is" at the end of the lease term if the lease is not in default for the sum of the "residual value" shown in paragraph 3.g.iv., a purchase option fee of **$495.00** (off lease fee) and applicable fees and taxes.

3.k. Other Important Terms. See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance and any security interests, if applicable.

—DS—
JRSR

Page 1 of 7                                                                                                          © Premier Financial Services, LLC

cuSign Envelope ID: F3EB9143-E9CB-4E9B-B9B7-B7F4AFCD2EFB

This is a copy view of the Authorative Copy h
by the designated custodian

irst. If you have decided to purchase this protection you understand that a copy of the filled-in contract will be sent to you as soon as practicable. You have
hosen from the following option:

. You choose to purchase our mechanical breakdown protection contract for the price of $__N/A__ and pay the price when you sign the lease.

LESSEE INITIALS: Not Applicable

b. You choose to purchase our mechanical breakdown protection contract for the price of $__N/A__ and have its cash price amortized in the monthly lease
ayments.

LESSEE INITIALS: Not Applicable

f you have not initialed either a. or b., you have chosen not to purchase our mechanical breakdown protection contract.

. VEHICLE WARRANTIES AND DISCLAIMERS

ou understand that unless otherwise indicated below the vehicle is subject to the manufacturer's new car warranty and you have those warranty rights. YOU
CKNOWLEDGE THAT YOU ARE LEASING THE VEHICLE "AS-IS" AND "WITH ALL FAULTS" AND ACCORDINGLY THAT WE MAKE NO EXPRESS
ARRANTIES AS TO THE VEHICLE AND SPECIFICALLY DISCLAIM ANY IMPLIED WARRANTIES, INCLUDING THOSE OF MERCHANTABILITY OR
ITNESS FOR ANY PARTICULAR PURPOSE OF THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES. THE ENTIRE RISK AS TO THE QUALITY
ND PERFORMANCE OF THE VEHICLE IS WITH THE LESSEE(S). IF YOU HAVE PROBLEMS WITH THE VEHICLE, WE WILL NOT BE RESPONSIBLE
OR THE REPAIRS, NOR WILL YOUR LEASE OBLIGATIONS BE AFFECTED.

x The standard written manufacturer's warranty. This warranty is made by the manufacturer and NOT by the Lessor.

 X LESSEE INITIALS: JRSR
Initials- Javier Ricardo

 X LESSEE INITIALS: _____
Initials-

0. OFFICIAL FEES AND TAXES

ou agree to be responsible for the payment when due of all official fees and taxes (other than our net income taxes) imposed by any governmental authority in
onnection with the vehicle or this lease. We have estimated in paragraph 5 the total of official fees and taxes we expect you will have to pay during the lease
erm. You understand that the rates and amounts of such fees and taxes may increase during the lease term, and you agree to pay any such increased
mounts. You also understand there may be taxes and fees which you pay directly to the taxing authority and excise or similar taxes which are assessed
uring the lease term but are not due until afterwards and that you are liable for these amounts. We will bill you as required under applicable law for payment of
roperty taxes. You must pay any applicable property taxes, regardless of whether the lease has terminated prior to billing or you have relocated.

1. LATE PAYMENT CHARGE AND LATE RETURN

f any monthly lease payment is not received by us within 10 days of its due date, a late charge of 5% of that payment will be imposed, which you agree to pay.
ou will pay a returned item charge of $30 for any check you give or other payment method you use which is not honored. In addition, if you do not return the
ehicle to us at lease expiration, you will be liable for an additional monthly lease payment for each month or portion of a month you retain the vehicle, and your
ease obligations will continue. You realize however, you have no right to retain the vehicle after lease expiration without our consent and that holding over is a
efault under the lease.

2. LIENS AND CLAIMS

ou will keep this lease and the vehicle free from any liens, encumbrances or claims which we have not created under paragraph 24. You will hold us harmless
nd indemnify us for all liability, loss and expense arising from the use, condition or ownership of the vehicle, including any claim made under the vicarious or
trict liability doctrine.

3. VEHICLE USE AND MAINTENANCE

ou agree at your expense to have the vehicle serviced in accordance with the manufacturer's recommendations, to maintain the vehicle in good running order
nd condition and to have all necessary repairs made. Unless you obtain our written consent beforehand, you will not make any changes to the vehicle which
vould decrease its economic value or functional utility. Any changes made to the vehicle which cannot be removed without decreasing its economic value or
unctional utility will become our property when made. If we request, we may inspect the vehicle at any reasonable time. You understand that you are
esponsible for all operating expenses (for example, gasoline, and oil) incurred in connection with the use of the vehicle. You will not use or permit use of the
ehicle: a. For any unlawful purpose or in violation of any law; b. By a person not having a valid driver's license or one who for insurance purposes is deemed
n assigned risk or one who does not exercise reasonable care in its operation; c. For the transportation of persons for hire; d. Outside the state where you
eside when you sign this lease for a period exceeding 30 days without our prior consent; or e. Outside the United States, without our prior consent.

4. STANDARDS FOR WEAR AND USE

he following standards apply for determining unreasonable or excess wear and use of the leased vehicle. You agree that when you return the vehicle to us,
ou will have properly maintained the vehicle, it will be in good running order and condition and will have, among other things, no less than 5 matching tires of
qual quality to the originals (or 4 with emergency "doughnut" spare), with each tire having at least 1/8 inch of remaining tread at its shallowest point, and no
hips, scratches, cracks, or other damage or defects in the glass, body, or interior beyond normal wear and tear. If at early termination it costs us more than $75
o put the vehicle in this condition, you promise to pay the difference, unless prohibited by law. At lease end you will pay any amounts in excess of $75 we pay
r which would be required, based on a good faith estimate of a qualified repair facility or appraiser we select, to put the vehicle in this condition. You also
ecognize that if the vehicle suffered frame damage or substantial other damage or if its odometer has been inoperable or tampered with, even though the
amage or odometer may have been repaired, the value of the vehicle will be substantially less than the value of an identical vehicle which has not had frame
amage or suffered substantial other damage or had an inoperable odometer or one which was tampered with. You understand that your obligations include
his difference, and that you will be liable for the diminished value in the vehicle (beyond normal wear and tear) that results from such damage, an accident, or
ny other event or circumstance.

5. OPTION TO PURCHASE LEASED VEHICLE PRIOR TO END OF LEASE

ou have the option to purchase the leased vehicle prior to the end of the lease. See "Other Provisions" between Sections 4 and 5 of this agreement for terms
f purchase prior to the end of the lease. You realize that this is a lease, and except for your right to possess and use the vehicle while you keep your promises
nder this lease, you have no ownership interest in the vehicle, its equipment, accessories or replacement parts unless you exercise the purchase option.
Vhether you purchase the vehicle during or at the end of the lease, the purchase will be on an "AS IS, WHERE IS, AND WITH ALL FAULTS" basis.

NDING THE LEASE

6. LEASE BALANCE

n paragraph 19 the term "Lease Balance" is used to describe a component of respectively the purchase option price of the vehicle prior to the lease expiration
nd your potential liability in the event of early termination where you do not purchase the vehicle. At any time, the Lease Balance equals the adjusted
apitalized cost shown in paragraph 3.g.iii. minus the depreciation portions of previously due monthly lease payments. The depreciation portion of a monthly
ease payment equals the base monthly payment shown in paragraph 3.g.ix. minus the "lease charge" portion of the payments. The lease charge portion is
alculated by multiplying the difference between (a) the adjusted capitalized cost and (b) the sum of one base monthly payment and the depreciation portions of
he previously due monthly leases payments by (c) the constant rate which over the term of the lease reduces the adjusted capitalized cost to the residual value
hown in paragraphs 3.g.iv. by subtracting the depreciation portions of all base monthly payments. These calculations assume a 360-day year of 12 months of
0 days each and that each payment is made in the scheduled amount and on the exact due date. These calculations follow the rules for journal entries for
essors as to "Direct Financing Leases" set forth in the Financial Accounting Standards Board's Standard No. 13. Additional information regarding calculation of
he Lease Balance appears in the "Other Provisions" box between paragraphs 4 and 5. Pursuant to the "Other Provisions" and paragraph 19, if the lease is
erminated early, you are obligated to pay a termination fee and an off lease fee, in addition to other amounts set forth in those sections.

7. VEHICLE RETURN

ou understand that upon lease termination you must return the vehicle to the place we specify. You also understand that you must pay us your termination
ability as calculated in paragraph 19 or 20 below, whichever is applicable.

8. VEHICLE VALUATION TERMINATION

DocuSign Envelope ID: F3EB9143-E9CB-4E9B-B9B7-B7F4AFCD2EFB

This is a copy view of the Authoritative Copy

f. YOU HAVE NO RIGHT TO ASSIGN AN INTEREST IN THE LEASE OR THE VEHICLE OR TO SUBLET OR LEND THE VEHICLE. You acknowledge that we may assign an interest in this lease or the vehicle and that if you receive notice of the assignment, you will acknowledge the notice and pay any assigned amounts specified in the notice as we have directed. You agree that no assignee is responsible for the performance of any of our duties under this lease unless the assignee expressly assumes the duties;

g. You are responsible for ensuring the Vehicle is registered and inspected as and when required by applicable law;

h. Any security deposit shown in paragraph 3.e.v. will not be considered as rent, will not bear interest unless provided by applicable law and will not release you from any of your obligations to us, and we may at any time apply the deposit to the payment of your obligation to us. You will not be entitled to any increase to or profit on the security deposit. We may mingle the security deposit with any of our other funds, unless prohibited by law. We have no fiduciary obligation to you regarding the security deposit. You understand that we will return any remaining balance of the deposit after you have paid off your liability under this lease;

i. We will have no liability for a failure or delay in delivering the vehicle or any other failure to perform our obligations related to the lease if caused by circumstances beyond our control. In no event will we be liable for consequential damages. Also, your obligations cease on notice to you if your credit has not been approved within 10 days. In that case, you will immediately return the vehicle to us at the place of delivery and will be liable for the cost of repair of any damage to the vehicle prior to the return;

j. You will indemnify and hold harmless Lessor, its assignee and agents from any loss or damage to the Vehicle and its contents and from all other claims, losses, injuries, expenses and costs, related to the use, maintenance or condition of the vehicle. You will promptly pay all fines and tickets imposed on the Vehicle or its driver;

k. If any term or provision of this lease shall, to any extent, be held invalid or unenforceable the remainder of this lease shall not be affected; and

l. You represent that your driver's license has not been revoked or suspended at the time of the execution of this Lease. Further, you will not allow anyone to drive this vehicle who is not lawfully authorized.

m. Any references in this agreement to "consumer" or "consumer lease" do not apply if the lease is made for commercial, business, or agricultural purposes.

n. You give us power of attorney to execute in your name any proofs of insurance claims or losses regarding the Vehicle and to endorse your name on any related insurance settlement draft or check.

o. **Electronic Records and Signatures.** You agree that we may use electronic records and electronic signatures to document this Lease Agreement and all subsequent documents and communications related to this lease. In such case, you agree to use electronic records and signatures. Your electronic signatures on electronic records will have the same effect as signatures on a paper document. They are legally binding and fully enforceable under the law. We may designate one authoritative copy of this contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies.

**25.1. LEASE FACILITATOR DISCLOSURE**

[X] If this box is checked, the Lessor paid or will pay a fee to a vehicle lease facilitator for the solicitation, procurement, or production of the Lessee or this Lease.

**26. ARBITRATION AGREEMENT**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your lease application, lease or condition of the vehicle, your lease agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign your lease agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If the lease agreement has been terminated due to your default, notwithstanding anything to the contrary in this Arbitration Agreement, you must elect to arbitrate a claim or dispute within 30 days after termination of the lease agreement. We may, but are not required to, arbitrate a claim you make or dispute you raise more than 30 days after termination of the lease agreement due to your default. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. Your may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), or the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 www.adr.org), or any other organization you may choose subject to our approval. You may get a copy of the rules of these organizations by contracting the arbitration organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which your lease agreement was entered into, unless the arbitrator determines that location to be inappropriate. In the event the arbitrator determines that conducting the arbitration in the federal district in which your lease agreement was entered into is inappropriate, the arbitration will be conducted in the federal district agreed upon by you and us. If either party elects arbitration but fails to appear at any arbitration hearing or arbitration proceeding, that party agrees that the arbitrator shall enter a judgment by default against such party. You agree to pay your filing, administration, service or case management fee, arbitrator's fee, hearing fee and all other fees and charges, including your attorneys' fees (unless applicable law requires us to pay your attorneys' fees). If applicable law prohibits imposing these fees upon you, the arbitrator shall direct that we pay them. The arbitrator may also require that we pay any such fees in whole or in part if such payment by us is necessary to assure that this arbitration provision is enforceable. If the chosen arbitration organization's rules conflict with this Arbitration Agreement, then this Arbitration Agreement controls. The arbitrator's award shall be final and binding on all parties, except that if the arbitrator's award for a party is $0 or against a party exceeds $200,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party is responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Agreement shall be governed by the Federal Arbitration Act, and not by any state arbitration law. You and we retain any rights to self-help remedies including, but not limited to, repossession by any method or manner not prohibited by applicable law. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Agreement shall survive any termination, payoff or transfer of your lease. Paragraph 25k does not apply to this Arbitration Agreement; instead, the following two sentences apply. If any part of this Arbitration Agreement, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration clause shall be unenforceable.

cuSign Envelope ID: F3EB9143-E9CB-4E9B-B9B7-B7F4AFCD2EFB

This is a copy view of the Authorative Copy h by the designated custodian

Early Termination Amortization Schedule  (as noted in  4. Other Provisions)

| Terms: | Purchase Price | $317,000.00 |
| | Down Payment | $47,550.00 |
| | Financed Amount | $269,450.00 |

| | Monthly Payment Due Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| Loan | 09/19/2017 | 0.00 | 0.00 | 0.00 | 269450.00 |
| 1 | 10/19/2017 | 3021.00 | 1384.17 | 1636.83 | 267813.17 |
| 2 | 11/19/2017 | 3021.00 | 1375.76 | 1645.24 | 266167.93 |
| 3 | 12/19/2017 | 3021.00 | 1367.31 | 1653.69 | 264514.24 |
| 2017 Totals | | 9063.00 | 4127.24 | 4935.76 | |
| 4 | 01/19/2018 | 3021.00 | 1358.81 | 1662.19 | 262852.05 |
| 5 | 02/19/2018 | 3021.00 | 1350.28 | 1670.72 | 261181.33 |
| 6 | 03/19/2018 | 3021.00 | 1341.69 | 1679.31 | 259502.02 |
| 7 | 04/19/2018 | 3021.00 | 1333.07 | 1687.93 | 257814.09 |
| 8 | 05/19/2018 | 3021.00 | 1324.40 | 1696.60 | 256117.49 |
| 9 | 06/19/2018 | 3021.00 | 1315.68 | 1705.32 | 254412.17 |
| 10 | 07/19/2018 | 3021.00 | 1306.92 | 1714.08 | 252698.09 |
| 11 | 08/19/2018 | 3021.00 | 1298.11 | 1722.89 | 250975.20 |
| 12 | 09/19/2018 | 3021.00 | 1289.26 | 1731.74 | 249243.46 |
| 13 | 10/19/2018 | 3021.00 | 1280.37 | 1740.63 | 247502.83 |
| 14 | 11/19/2018 | 3021.00 | 1271.43 | 1749.57 | 245753.26 |
| 15 | 12/19/2018 | 3021.00 | 1262.44 | 1758.56 | 243994.70 |
| 2018 Totals | | 36252.00 | 15732.46 | 20519.54 | |
| 16 | 01/19/2019 | 3021.00 | 1253.41 | 1767.59 | 242227.11 |
| 17 | 02/19/2019 | 3021.00 | 1244.32 | 1776.68 | 240450.43 |
| 18 | 03/19/2019 | 3021.00 | 1235.20 | 1785.80 | 238664.63 |
| 19 | 04/19/2019 | 3021.00 | 1226.02 | 1794.98 | 236869.65 |
| 20 | 05/19/2019 | 3021.00 | 1216.80 | 1804.20 | 235065.45 |
| 21 | 06/19/2019 | 3021.00 | 1207.54 | 1813.46 | 233251.99 |
| 22 | 07/19/2019 | 3021.00 | 1198.22 | 1822.78 | 231429.21 |
| 23 | 08/19/2019 | 3021.00 | 1188.86 | 1832.14 | 229597.07 |
| 24 | 09/19/2019 | 3021.00 | 1179.44 | 1841.56 | 227755.51 |
| 25 | 10/19/2019 | 3021.00 | 1169.98 | 1851.02 | 225904.49 |
| 26 | 11/19/2019 | 3021.00 | 1160.48 | 1860.52 | 224043.97 |
| 27 | 12/19/2019 | 3021.00 | 1150.92 | 1870.08 | 222173.89 |
| 2019 Totals | | 36252.00 | 14431.19 | 21820.81 | |
| 28 | 01/19/2020 | 3021.00 | 1141.31 | 1879.69 | 220294.20 |
| 29 | 02/19/2020 | 3021.00 | 1131.66 | 1889.34 | 218404.86 |
| 30 | 03/19/2020 | 3021.00 | 1121.95 | 1899.05 | 216505.81 |
| 31 | 04/19/2020 | 3021.00 | 1112.19 | 1908.81 | 214597.00 |
| 32 | 05/19/2020 | 3021.00 | 1102.39 | 1918.61 | 212678.39 |
| 33 | 06/19/2020 | 3021.00 | 1092.53 | 1928.47 | 210749.92 |
| 34 | 07/19/2020 | 3021.00 | 1082.63 | 1938.37 | 208811.55 |
| 35 | 08/19/2020 | 3021.00 | 1072.67 | 1948.33 | 206863.22 |
| 36 | 09/19/2020 | 3021.00 | 1062.66 | 1958.34 | 204904.88 |
| 37 | 10/19/2020 | 3021.00 | 1052.60 | 1968.40 | 202936.48 |
| 38 | 11/19/2020 | 3021.00 | 1042.49 | 1978.51 | 200957.97 |
| 39 | 12/19/2020 | 3021.00 | 1032.32 | 1988.68 | 198969.29 |
| 2020 Totals | | 36252.00 | 13047.40 | 23204.60 | |
| 40 | 01/19/2021 | 3021.00 | 1022.11 | 1998.89 | 196970.40 |
| 41 | 02/19/2021 | 3021.00 | 1011.84 | 2009.16 | 194961.24 |
| 42 | 03/19/2021 | 3021.00 | 1001.52 | 2019.48 | 192941.76 |
| 43 | 04/19/2021 | 3021.00 | 991.15 | 2029.85 | 190911.91 |
| 44 | 05/19/2021 | 3021.00 | 980.72 | 2040.28 | 188871.63 |
| 45 | 06/19/2021 | 3021.00 | 970.24 | 2050.76 | 186820.87 |
| 46 | 07/19/2021 | 3021.00 | 959.70 | 2061.30 | 184759.57 |
| 47 | 08/19/2021 | 3021.00 | 949.11 | 2071.89 | 182687.68 |
| 48 | 09/19/2021 | 3021.00 | 938.47 | 2082.53 | 180605.15 |
| 49 | 10/19/2021 | 3021.00 | 927.77 | 2093.23 | 178511.92 |
| 50 | 11/19/2021 | 3021.00 | 917.02 | 2103.98 | 176407.94 |
| 51 | 12/19/2021 | 3021.00 | 906.21 | 2114.79 | 174293.15 |
| 2021 Totals | | 36252.00 | 11575.86 | 24676.14 | |
| 52 | 01/19/2022 | 3021.00 | 895.35 | 2125.65 | 172167.50 |
| 53 | 02/19/2022 | 3021.00 | 884.43 | 2136.57 | 170030.93 |
| 54 | 03/19/2022 | 3021.00 | 873.45 | 2147.55 | 167883.38 |
| 55 | 04/19/2022 | 3021.00 | 862.42 | 2158.58 | 165724.80 |
| 56 | 05/19/2022 | 3021.00 | 851.33 | 2169.67 | 163555.13 |
| 57 | 06/19/2022 | 3021.00 | 840.19 | 2180.81 | 161374.32 |
| 58 | 07/19/2022 | 3021.00 | 828.98 | 2192.02 | 159182.30 |
| 59 | 08/19/2022 | 160000.00 | 817.70 | 159182.30 | 0.00 |
| 2022 Totals | | 181147.00 | 6853.85 | 174293.15 | |
| Grand Totals | | 335218.00 | 65768.00 | 269450.00 | |

© Premier Financial Services, LLC